I would ask to reserve four minutes for rebuttal. In Mr. Hoffa's case, subsequent search warrant to search his phone does not cure the taint of the initial illegal search. A search warrant can clear up taint of an illegal seizure because that seizure only affects possessory interests, whereas the illegal search of the home where Mr. Hoffa was temporarily staying violated his privacy interests. Well, it's only illegal if one believes the witness is friendly to Mr. Hoffa, the girlfriend and her mom. Is that fair? That is correct, Your Honor. The concern with the agent and officer's testimony is the only thing they remember to any consistency is this phone was somewhere in plain view. The three officers can't agree on who answered the front door. Officer Stewart can remember seeing the phone, but he never touched it. The one that sees it through the door windows? He sees it through the door and then, according to his testimony, when Detective or Agent O'Keefe is talking to Mr. Hoffa, he spots the phone. Seeing it through the door doesn't save it in the sense that Mr. Hoffa could have been seen and then threw it under the clothes and they still couldn't search it. Correct. But, on the other hand, they do seem to be consistent and the Court credited it that ultimately they focused on it and I guess Stewart is the one who appears to have gotten it and your response seems to be, well, it's improper, it's implausible that they wouldn't have seen it right away. Isn't that really the thrust that is if they said, as soon as we came in, we saw Mr. Hoffa there and there's the phone, that'd be consistent. But you argue that, well, they didn't see it right away. But is that really a killer? That's part of it. It is the sum total of inconsistencies and lack of remembrance. Officer Stewart, I saw it. I didn't touch it. O'Keefe was there in the room with us. O'Keefe, I wasn't there when they found it. I was upstairs. I don't remember which time it was that I was upstairs, but when I came down, some unnamed officer, I can't remember who, handed me the phone. And then you have Officer Zion saying, I didn't have anything to do with this. I was just clearing the house. I don't know anything about a phone. So when you have that collective, we remember it was in plain view, but we don't remember anything else or what we do remember does not make sense with another officer's remembrance, that points a finger at a fishy smell in their testimony. Well, the court says, if I read it correctly at page five, Stewart found the phone lying on the table in the living room. That is correct in that he says, Stewart says he saw it. Okay. And that, but when You're distinguishing between saw and found? Correct. Because Stewart denies picking up the phone. And Stewart says he saw the phone after or contemporaneous with O'Keefe asking Hoffa, where's the cell phone? And it's like, if it's out in plain view, why is O'Keefe asking about a phone and why is O'Keefe doesn't see it? I mean, I've walked around my house and my cell phone's been on my table and I haven't seen it for a long time. The other element of that though, Your Honor, is O'Keefe, once he remembers asking about a cell phone, does not, says he was not there when the cell phone was seen or found. O'Keefe is the one who went upstairs to deal with April? Correct. He went upstairs. Dion went upstairs. O'Keefe thinks he may have gone upstairs twice. He wanted to search the dresser and was looking for evidence that Mr. Hoffa was staying at that house on 2nd North Street. But it just, there's a disconnect. And it's just too significant a disconnect to discount. What is the disconnect? That Stewart says O'Keefe was in the room, this is not a big house, in the room when I saw the upstairs, when they found the cell phone, I came downstairs, some officer handed it to me. There were six or seven officers in the house at this time, isn't that right? Eventually. It is not clear from the testimony when those officers arrived. Initially there were the three officers, O'Keefe, Stewart, and Zion. There was another detective who arrived at some point. There was a housing authority officer who arrived at some point. There was a third officer. So yes, eventually there is a lot of law enforcement in this house, but it's not clear when they arrived and what they did aside from... What's implausible, again I'm reading on page five, what's implausible about O'Keefe asking Hoffa about the cell phone, Hoffa denies it, and Stewart says, Stewart says, I saw you on the phone. And then O'Keefe goes upstairs and soon thereafter, Stewart finds the phone. What's implausible about that? That is an incorrect recitation of the testimony. By the judge? By the district court. There are several errors in their recitation. All right, what's the correct recitation? Correct is that O'Keefe was there in the room talking to Mr. Hoffa when Stewart says he saw the phone. That's based on Stewart's statement. Based on Stewart's statement. Stewart's statement and O'Keefe's statement do not match up. Okay, and the judge decides which one is less confused than the other. Certainly it's a commonplace of district court testimony that people are simply confused. And sometimes the is it more plausible that they're all lying? Maybe he made the wrong choice. Or the district court made a decision that they wanted to believe, that they knew that the cell phone being in plain view was the crux of the case. I mean, you saw that. That's always the case. Their testimony was consistent on that point. And that's the only point it was consistent on. I mean, O'Keefe doesn't testify about it being in plain view. O'Keefe just testifies that he did not root through this dresser that didn't have drawers but had the separators. And you can see in the district court summary of the fact, it's discounting as unbelievable that this dresser might have been moved without its drawers. And that, therefore, you can't believe this testimony. But so much of the Richards' testimony is eventually either confirmed by the police or the police say, well, you know, I don't really remember. That might have happened the way she said. I don't want to say it did not. Aside from the cell phone was, I did not root through these clothes and this dresser. It was out in plain view. And so that it is the crux of the case who you believe in because of the inconsistencies and the lack of memory in these officers. And I think your honors have all seen cases that were a year or two old at the time of testimony where officers had remarkably detailed memories of what happened where and when. Can you point us to any case in which our court has set aside a district court credibility determination in a criminal case? United States versus Kelvin Johnson. Judge Boggs wrote the opinion. The advantage in Mr. Johnson's case was there was a police video. It was a car stop. And about where it's just dueling witnesses. Dueling witnesses. Not that come to mind. And I think we have the issue where, you know, juries are instructed not to give police officers testimony greater weight, but that our system routinely does. Well, this is a district judge who's making the determination. Correct. So, I mean, the judge knows the law. The judge does know the law. The judge, the district court, it's the magistrate judge who motion to suppress. Okay. Actually, let me correct myself on that. I think actually the district court judge did hear the motion to suppress. I apologize. But yes, this is an issue where we're saying the police officers are not being candid with the court about where and how. What is our standard of review? I mean, what do you have to show in order for us to set aside a district court credibility determination about dueling witnesses that the court eyeballed as they're testifying? It is a clear error standard. It's just straight up clear error? Yes. As far as the factual determinations in a motion to suppress, it is clear error. Well, the factual determinations are one thing. The credibility determination is another. And also, we view it in the light most likely to support the district court's decision? There is that as well, Your Honor. And generally, credibility determinations are to the fact finder. However, when you have a situation like this where the officer's testimony is suspect, as it was in Kelvin Johnson there having the advantage of a video that belied some of the officer's testimony, this court is able and should in this case say the district court erred. That it was clear error that even in viewing the light, evidence in the light most favorable to the government, that they should not have been believed about the cell phone being out in plain view. And just to recap the key inconsistency, is it whether Stewart and O'Keefe were together when Stewart found it or whether they were not? That is part of it, Your Honor. The other part is just the overall lack of memory of anything other than in plain view. Does Stewart ever say O'Keefe was there when I found it? Yes. That O'Keefe was talking to Hoffa, he was asking him where's the cell phone, Hoffa was denying the cell phone, and Stewart said it's right there. So why are those two things mutually exclusive? Because Officer O'Keefe testifies he was upstairs when the phone was found. That he came back downstairs and some officer, he doesn't know which one or doesn't say which one, handed him the phone. So the part, and again where you disagree with sort of factually the judge's statement, is that when O'Keefe says Stewart gave it to him when he came back downstairs and you're reading, and I guess we can read Stewart's testimony, because the way you put it was O'Keefe says X and Stewart says it's right there, which implies simultaneity, whereas the court says soon thereafter, which gives O'Keefe time to get out and therefore make them congruent. What's exactly the page number and exactly the quote I should look at? Um, on page ID number 280, it's page number 38, Officer O'Keefe testifies, when I came back downstairs another officer had found a cell phone and collected that cell phone. I wasn't there, and then on page 77 he says, I wasn't. O'Keefe I understand, but the inconsistency would come if the way you related it, immediately after O'Keefe says where's the phone. Correct, on page 105, that is page ID number 347, Officer Stewart testifies, I'm wanting to think Detective O'Keefe had asked Mr. Hoffa if he had a phone. I believe he told him no, that he didn't, and I might have made a comment. I saw you on the phone through the window. He doesn't remember if Hoffa said anything, and then I'm standing there talking to him. There might have been an end table or something next to the chair. Talking to him, Hoffa, or him, O'Keefe? That is not clear. I think it may have been Hoffa, and it was during that exchange with O'Keefe and Stewart that Stewart's saying he saw the phone. I'll read it for myself, but so far you haven't said anything that absolutely says there couldn't be some time for O'Keefe to go upstairs. That's what I'll look at though. That's, that's your best part. Okay, thank you. Thank you. Good morning. May it please the court. My name is Bill Roach, and I represent the United States. The district court in this case did exactly what it was expected to do. It listened to testimony from opposing witnesses. It examined those witnesses itself. It evaluated their manner of testifying. It evaluated their behavior, their candor, and it evaluated the reasonableness of their testimony. It then assessed the credibility of the witnesses, and it made factual findings anchored in those credibility assessments. Its factual findings are supported by the record, and its decision should be affirmed. In essence, the defendant has not shown that his Fourth Amendment rights were violated based on the factual findings that the district court made. And if the panel has no further questions, the United States will rest on a brief. Apparently we do not. Thank you, counsel. Thank you. Your Honor, on page 105, it's page ID 347. This is Officer Stewart's testimony about seeing the phone on the table. The government asks, what did you do then? He replies, I think that's when O'Keefe was talking to him, being Hoffa, asking him if he had a phone, and he said no, and just visually looking, I seen the phone that I had previously seen through the window. So he's saying O'Keefe is talking to Hoffa, and Officer Stewart sees the phone. He doesn't say he picked it up at that point, but okay, I get your point. Yes, Your Honor. So there is that contradiction, along with all the other issues with their memory. Does the court have any other questions? Thank you. We do not. Thank you, counsel. The case will be submitted.